**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | Chapter 13 |
| Christopher T. Everett, | Case No.: 16-33392 |
| Debtor(s). | |

**NOTICE OF HEARING AND
MOTION FOR RELIEF FROM AUTOMATIC STAY**

To:    The Debtor, Christopher T. Everett; James A. Agosto, Esq., his counsel of record; and the other entities specified in Local Rule 9013-3(a).

1.    Federal National Mortgage Association, by its undersigned attorneys, The Academy Law Group, P.A., hereby makes a motion for the relief requested below and gives notice of hearing.

2.    The court will hold a hearing on this motion on May 30, 2017 at 1:30 P.M., Courtroom No. 2C, at the United States Courthouse, 316 North Robert Street, St. Paul, Minnesota 55101, or as soon thereafter as counsel may be heard, before The Honorable Katherine A. Constantine, United States Bankruptcy Judge.

3.    Any response to this motion must be filed and served by delivery or by mail not later than May 25, 2017, which is five days before the time set for the hearing (including Saturdays, Sundays, and holidays).  **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

1

4.     This court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, Fed. R. Bankr. P. 5005, and Local Rule 1070-1.  This proceeding is a core proceeding.

5.     The petition commencing this chapter 13 case was filed on November 1, 2016. The case is now pending in this court.

6.     This motion arises under 11 U.S.C. § 362(d) and Fed. R. Bankr. P. 4001.  This motion is filed pursuant to Fed. R. Bankr. P. 9014, and Local Rules 9013-1 through 9013-3.

7.     The Debtor, Christopher Thomas Everett, executed that certain promissory note (the "Debt Agreement"), secured by that certain mortgage (the "Mortgage"), copies of which are attached as Exhibits A and B, respectively, to the Declaration in Support filed herewith.  The terms of the Debt Agreement were amended by that certain loan modification agreement, entered into by and between Federal National Mortgage Association, and the Debtor, dated May 8, 2015 (the "Loan Modification Agreement").  The Debt Agreement is either made payable to the movant or has been duly endorsed.  Movant is the owner of the Debt Agreement and entitled to enforce the Debt Agreement.  Movant is the original mortgagee, beneficiary, or the assignee of the Mortgage.

8.     The movant requests relief from the automatic stay of 11 U.S.C. § 362 with respect to certain real property that is subject to a perfected security interest in favor of the movant, as demonstrated by the terms of the Debt Agreement, Mortgage and Assignments of Mortgage.

9.     The movant requests that the court waive the 14-day stay pursuant to Fed. R. Bankr. P. 4001(a)(3).

2

10.     Pursuant to the provisions of 11 U.S.C. § 362(d), the movant alleges that it is entitled to relief from the automatic stay inasmuch as:

      a.    Pursuant to the chapter 13 plan scheduled for confirmation on May 11, 2017, the Debtor was to make all current monthly payments due on said mortgage directly to movant.

      b.    As of May 4, 2017, the Debtor is in default under the Mortgage as a result of a failure to make said payments.

      c.    The total amount of the mortgage default is $6,079.73.   A detailed breakdown of this total amount can be found on the attached Local Form 4001-1.

      d.    As of May 4, 2017, the amount due under said mortgage loan was approximately $158,079.98.

      e.    According to the county tax records, the current tax-assessed value of the property is estimated at $118,600.00.  According to the Debtor, the fair market value of the property is estimated at $138,567.00.  Based upon the information available to the movant, it estimates the fair market value of the property to be $138,567.00.

11.     By reason of the foregoing, good cause exists to lift the automatic stay imposed by 11 U.S.C. § 362(a) to allow the movant to pursue its remedies under state law.

**WHEREFORE,** Federal National Mortgage Association, by its undersigned attorneys, requests that this court grant an order pursuant to 11 U.S.C. § 362(d), terminating the automatic stay with respect to the real property securing the movant's claim so that the movant may pursue its rights under applicable state law and waiving the 14-day stay pursuant to Fed. R. Bankr. P. 4001(a)(3).

Respectfully submitted,

**THE ACADEMY LAW GROUP, P.A.**

Dated: May 10, 2017                    By: ***/e/ Samuel R. Coleman***
                                            Samuel R. Coleman (#389839)
                                            Attorneys for Movant
                                            The Academy Professional Building
                                            25 North Dale Street
                                            St. Paul, MN 55102
                                            Telephone: (651) 209-9785
                                            Fax: (651) 292-9482
                                            samuel@theacademylawgroup.com
                                            (16-1249-BK05)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re:<br><br>Christopher T. Everett,<br><br>               Debtor. | Bky. No.: 16-33392<br><br>Chapter 13 |

## UNSWORN DECLARATION IN SUPPORT OF
## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

I, Shannon Duran , declare under penalty of perjury as follows:

1.    I am a Bankruptcy specialist of Seterus, Inc. and am authorized to sign this declaration on behalf of Seterus, Inc. as servicer for Federal National Mortgage Association. This declaration is provided in support of the Motion for Relief from Stay (the "Motion") filed contemporaneously herewith.

2.    As part of my job responsibilities for Seterus, Inc., I have personal knowledge of and am familiar with the types of records maintained by Seterus, Inc. in connection with the loan that is the subject of the Motion (the "Loan") and the procedures for creating those types of records. I have access to and have reviewed the books, records, and files of Seterus, Inc. that pertain to the Loan and extensions of credit given to the debtor concerning the property securing such Loan.

3.    The information in this declaration is taken from Seterus, Inc.'s business records regarding the Loan. The records are: (a) made at or near the time of the occurrence of the

1

matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; and (b) kept in the course of Seterus, Inc.'s regularly conducted business activities. It is the regular practice of Seterus, Inc. to create and maintain such records.

4.     The Debtor, Christopher T. Everett, has executed and delivered or is otherwise obligated with respect to that certain promissory note referenced in the Motion (the "Note"). Pursuant to that certain mortgage referenced in the Motion (the "Mortgage"), all obligations of the Debtor under and with respect to the Note and the Mortgage are secured by the property referenced in the Motion.

5.     The Note and Mortgage cover real estate located at 1519 Roosevelt Ave, Red Wing, MN 55066 and legally described as follows, to wit:

> Lot Fifty-five (55) of Sunnyside Rearrangement of Blocks 14, 15, 16, 21, 22 and (Part of Block 13, being Lots 11 and 12) all of Kost and Crescy's Addition to the City of Red Wing, according to the plat thereof on file and of record in the Office of County Recorder of Goodhue, State of Minnesota.

6.     The current tax-assessed value of the subject property is $118,600.00. Based on Schedule A, movant is informed and believes, based on the Debtor's sworn bankruptcy schedules, that the fair market value of the subject property is approximately $138,567.00.

7.     As of May 4, 2017, there are one or more defaults in paying post-petition amounts due with respect to the Note.

8.     As of May 4, 2017, the unpaid principal balance of the Note is $145,364.09.

9.     The following chart sets forth those post-petition payments, due pursuant to the terms of the Note, that have been missed by the Debtor as of May 4, 2017:

2

| Number of Missed Payments | From | To | Missed Principal and Interest | Missed Escrow (if applicable) | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| 1 | 1/1/2017 | 1/1/2017 | $625.03 | $402.85 | $1,027.88 | $1,027.88 |
| 4 | 2/1/2017 | 5/1/2017 | $625.03 | $372.15 | $997.18 | $3,988.72 |
| Less post-petition partial payments (suspense balance): | | | | | | $698.12 |
| | | | | | Total: | $4,318.48 |

10.    As of May 4, 2017, the total post-petition arrearage/delinquency and amount necessary to cure the post-petition default alleged in the Motion is $6,079.73, consisting of (i) the foregoing total of missed post-petition payments in the amount of $4,318.48; plus (ii) the following post-petition fees[1]:

| Description | Amount |
|---|---|
| Title Fee | $150.00 |
| Publication Fee | $820.00 |
| Service Fee | $100.00 |
| Notice of Default | $50.00 |
| Attorney Fees | $610.00 |
| Late Fee | $31.25 |

12.    The following documents are attached as exhibits and incorporated herein by reference:

---

1  The total of missed post-petition payments for this impounded loan include any missed escrow payments. Such missed escrow payments include amounts assessed for taxes and insurance and any previously assessed escrow shortage amount (if applicable). To avoid duplication, post-petition advances (if any) made for insurance, real estate taxes, or similar charges are not listed separately to the extent such advances would have been paid from the missed escrow payments. As part of the next annual RESPA analysis, Seterus will determine whether the escrow payments assessed to the debtor (including the missed escrow payments) result in a projected escrow shortage or overage. All rights are hereby reserved to assert or request any escrow amounts in accordance with RESPA and the total post-petition arrearage/delinquency is qualified accordingly.

(a)     Attached hereto as Exhibit A and incorporated herein by reference is a true and correct copy of the Mortgage.

(b)     Attached hereto as Exhibit B and incorporated herein by reference is a true and correct copy of the Note.

(c)     Attached hereto as Exhibit C and incorporated herein by reference is a true and correct copy of the Assignment of Mortgage.

(d)     Attached hereto as Exhibit D and incorporated herein by reference is a true and correct copy of the Assignment of Mortgage.

(e)     Attached hereto as Exhibit E and incorporated herein by reference is a true and correct copy of the Loan Modification.

(f)     Attached hereto as Exhibit F and incorporated herein by reference is a true and correct copy of the Power of Attorney.

(g)     Attached hereto as Exhibit G and incorporated herein by reference is a County Property Tax Assessment of the property described above.

(h)     Attached hereto as Exhibit H and incorporated herein by reference is Local Form 4001-1, detailing the Debtor's complete Account history beginning on the date of default applicable to this Motion and continuing through May 4, 2017.

(i)     Attached hereto as Exhibit I is an addendum listing all fees and charges assessed to the account of the Debtor post-petition.

4

Pursuant to 28 U.S.C. § 1746, I hereby declare, under penalty of perjury pursuant to the laws of the United States of America, that the foregoing is true and correct.

Executed this ___8th___ day of ___May___, ___2017___.

Name: Shannon Duren
Title: Bankruptcy Specialist

5

Exhibit A

DOC: A 548919

Certified, Filed and or Recorded on
SEP. 18, 2007 AT 02:35:00PM

Signed: _____
DEPUTY
LISA M HANNI
GOODHUE COUNTY RECORDER
Fee Amount:    $46.00

MORTGAGE REGISTRY
$328.33
BS    09/18/07
Goodhue County A/T OR Deputy - Date

Everett

———————————————[Space Above This Line For Recording Data]———————————————

# MORTGAGE

Return To:

CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO  63179-0021

FP71745
AFTER RECORDING PLEASE RETURN TO
A la carte broker Services, LLC
7300 Norman Center Drive #730
Bloomington, MN 55437

ABSTRACT

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **September 13, 2007**                    ,
together with all Riders to this document.

MINNESOTA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3024  1/01



-6A(MN) (0005).02

Page 1 of 15          Initials: CIE

VMP Mortgage Solutions, Inc.

(B) "Borrower" is Christopher Thomas Everett, Single Man

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is CitiMortgage, Inc.

Lender is a  Corporation
organized and existing under the laws of  New York
Lender's address is  1000 Technology Drive, O' Fallon, MO  63368-2240

(E) "Note" means the promissory note signed by Borrower and dated   September 13, 2007
The Note states that Borrower owes Lender  One Hundred Forty Two Thousand Seven Hundred Fifty
                                                                                                                            Dollars
(U.S. $ 142,750.00                    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   October 1, 2037

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |
| | | Other(s): |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.



Initials: _CCE_

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the County                                    of GOODHUE                                    :

       [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]:

See Schedule A attached hereto and made a part hereof.

Parcel ID Number:
1519 ROOSEVELT AVE
RED WING
("Property Address"):

which currently has the address of
                                 [Street]
[City], Minnesota  55066-3343        [Zip Code]

Initials: 

-6A(MN) (0005).02
®

Page 3 of 15

Form 3024  1/01
CitiMortgage 3.2.11.06 V2

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.



Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.



Initials: _C L E_

Form 3024   1/01
CitiMortgage 3.2.11.06 V2

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.



Initials: _CTE_

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's



Initials: _CTE_

Page 7 of 15

Form 3024  1/01
CitiMortgage 3.2.11.06 V2

-6A(MN) (0005).02

knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and



Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless

Initials: $CTE$



-6A(MN) (0005).02                           Page 9 of 15                           Form 3024   1/01
CitiMortgage 3.2.11.06 V2

Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal



owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument at the time such documents are executed or within a reasonable time thereafter.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security



Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).



Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower by certified mail to the address of the Property or another address designated by Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

25. **Interest on Advances.** The interest rate on advances made by Lender under this Security Instrument shall not exceed the maximum rate allowed by Applicable Law.



Initials: _CTE_

Form 3024   1/01
CitiMortgage 3.2.11.06 V2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____         _Christopher Thomas Everett_____ (Seal)
                                                                    -Borrower
                                         Christopher Thomas Everett
                                         (Sign Original Only)


VMP -6A(MN) (0005).02                 Page 14 of 15                 Form 3024  1/01
   ®                                                               CitiMortgage 3.2.11.06 V2

Dakota

STATE OF MINNESOTA,                                                County ss:

On this   13th        day of    September  2007              , before me appeared

Christopher Thomas Everett, Single Man

to me personally known to be the person(s) described in and who executed the foregoing instrument and
acknowledged that he/she/they executed the same as his/her/their free act and deed.

Notary Public
My Commission Expires: 1/31/09

PAMELA LYNN SORENSEN
Notary Public
Minnesota
My Commission Expires January 31, 2009

This instrument was drafted by:
CitiMortgage, Inc.
699 Walnut
Des Moines, IA  50309

Tax statements for the real property described in this instrument should be sent to:
CitiMortgage, Inc.
P.O. Box 1800
Attn: Tax Dept
Farmington Hills, MI  48334-3357

Schedule A

Lot Fifty-five (55) of Sunnyside Rearrangement of Blocks 14, 15, 16, 21, 22 and (Part of Block 13, being Lots 11 and 12) all of Kost and Cresy's Addition to the City of Red Wing, according to the plat thereof on file and of record in the Office of the County Recorder of Goodhue, State of Minnesota

Exhibit B

# NOTE

September 13, 2007        **Lakeville**        **Minnesota**
[Date]              [City]             [State]

**1519 ROOSEVELT AVE, RED WING, MN  55066-3343**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 142,750.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is CitiMortgage, Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.625       %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st       day of each month beginning on November 1, 2007       . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on October 1, 2037       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1000 Technology Drive, O' Fallon, MO  63368-2240
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 1,010.38       .

## 4. BORROWER'S RIGHT TO PREPAY
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Wolters Kluwer Financial Services    Form 3200 1/01
VMP ®-5N (0207).01           Initials: *CTE*
Page 1 of 3



## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000     % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Form 3200 1/01
Initials: _CE_

CitiMortgage 3.2.11.06 V2

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
-Borrower

Christopher Thomas Everett

*(Sign Original Only)*

Pay to the order of

without recourse on us CitiMortgage, Inc.
F/K/A Citicorp Mortgage, Inc.
D/B/A Citicorp Mortgage, Inc in NM, on it's own
behalf or as Attorney-In-Fact for: Citibank FSB;
Citibank (New York State), Citibank (Nevada), NA;
Citibank, NA F/K/A Citibank (West) FSB

Janet L. Syms, Senior Vice President
CitiMortgage, Inc.

Form 3200 1/01
CitiMortgage 3.2.11.06 V2

Exhibit C

Certified, Filed, and or Recorded on
August 26, 2013 2:07 PM
Signed: _____ Deputy
LISA M HANNI
GOODHUE COUNTY RECORDER
Fee Amount $46.00

After Recording Return to:
CT LIEN SOLUTIONS
PO BOX 29071
GLENDALE, CA 91209-9071

Prepared By
CITIMORTGAGE, INC
HELENE E ROBINSON
1000 TECHNOLOGY DRIVE, MS 321
O'FALLON, MO 63368-2240

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that Mortgage Electronic Registration Systems, Inc. as nominee for CitiMortgage, Inc. its successors and assigns, for good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, does hereby sell, assign, transfer, and set over to CitiMortgage, Inc., Assignee Address: 1000 Technology Drive, O'Fallon, MO, 63368, that certain mortgage executed by Christopher Thomas Everett as mortgagor, to Mortgage Electronic Registration Systems, Inc. as nominee for CitiMortgage, Inc. its successors and assigns dated 09/13/2007, filed for the record on 09/18/2007 in the office of the Goodhue County Recorder/Registrar of Titles as Instrument No: A 548919, and does hereby covenant with the assignee, its successors and assigns that it has good right to sell, assign and transfer the same.

Dated: 8-15-11 8-15-13

Mortgage Electronic Registration Systems, Inc. as nominee for CitiMortgage, Inc. its successors and assigns

By _____
Name Helene E. Robinson
Title: Assistant Secretary

STATE OF MISSOURI, ST. CHARLES COUNTY

On 8/15/13 _____ before me, the undersigned, a notary public in and for said state, personally appeared **Helene E. Robinson, Assistant Secretary of Mortgage Electronic Registration Systems, Inc. as nominee for CitiMortgage, Inc.** its successors and assigns personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public **Geraldine Ann Belinski**
Commission Expires April 25, 2016

```
GERALDINE ANN BELINSKI
Notary Public - Notary Seal
State of Missouri
Commissioned for St Charles County
My Commission Expires: April 25, 2016
Commission Number: 12332610
```

Exhibit D

Certified, Filed, and Recorded on:
June 30, 2014 10:21 AM
Signed _____ Deputy
LISA M HANNI
GOODHUE COUNTY RECORDER
Fee Amount: $46.00

# ASSIGNMENT OF MORTGAGE

**Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way, #200, Beaverton, OR 97005, telephone #1-866-570-5277, which is responsible for receiving payments.**

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **CITIMORTGAGE, INC.,WHOSE ADDRESS IS 1000 TECHNOLOGY DRIVE, OFALLON, MO, 63368, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to **FEDERAL NATIONAL MORTGAGE ASSOCIATION, WHOSE ADDRESS IS 14221 DALLAS PARKWAY, SUITE 100, DALLAS, TX 75254, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage was dated 09/13/2007, executed by **CHRISTOPHER THOMAS EVERETT, SINGLE MAN** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CITIMORTGAGE, INC.** and filed for record on 09/18/2007 as Document # 548919, and/or Book , Page , in the office of the County recorder of GOODHUE County, Minnesota.

**Dated on** __6 / 18 /20 14__ **(MM/DD/YYYY)**
**CITIMORTGAGE, INC.**

**By:** _____

      **Heather Navarro**
      **VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA   COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on __10/18__ /20 14 (MM/DD/YYYY), by Heather Navarro as VICE PRESIDENT of CITIMORTGAGE, INC., who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
Tonya L. Tejera
Notary Public - State of FLORIDA
Commission expires: 02/25/2017

      Tonya L. Tejera
      Notary Public State of Florida
      My Commission # EE 849072
      Expires February 25, 2017

**Prepared By/Return To: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
CMOAV 22384749 -- MSR-2014-06-01-STRUS    DOCR T0514062808  [C-1]  FRMMN1

# Exhibit E

─────────────────────────── [Space Above This Line For Recording Data] ───────────────────────────

L790AC.1

████████████████████████████

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 8th day of May, 2015, between
EVERETT, CHRISTOPHER T ("Borrower") and Seterus, Inc. ("Servicer") Loan Servicer for Federal
National Mortgage Association ("Lender"), amends and supplements (1) the Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated
September 13, 2007 and recorded in Book or Liber n/a, at page(s) n/a, Instrument Number 548919,
of the Goodhue Records of MN and (2) the Note, bearing the same date as, and secured by, the
Security Instrument, which covers the real and personal property described in the Security
Instrument and defined therein as the "Property," located at
     1519 ROOSEVELT AVE, RED WING MN 55066-3343,

the real property described being set forth as follows:
     Property Legal Description - See Attached Exhibit A

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as
follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

EVERETT, CHRISTOPHER T ████████
LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179  1.01 (rev. 06.12)    Page 1 of 8

1. As of June 01, 2015, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $146,807.57, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.125%, from May 01, 2015. Borrower promises to make monthly payments of principal and interest of U.S. $625.03, beginning on the 1st day of June, 2015, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 4.125% will remain in effect until principal and interest are paid in full. If on May 01, 2055 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. In addition to the regularly scheduled payments that Borrower is required to pay under the Modification Agreement, Borrower agrees to pay Servicer an escrow payment in the amount of $390.83 for deposit into an escrow account for necessary payments to be made by Servicer, including but not limited to, payments for property taxes and insurance. As permitted by the Real Estate Settlement Procedures Act and other applicable law, Servicer may adjust the amount of the Escrow Payment. After notice of such adjustment, Borrower shall pay the adjusted Escrow Payment.
   (a) Each Escrow Payment shall be due on the same day(s) of the month as the regularly scheduled payments due under the Modification, commencing June 01, 2015.
   (b) In the event Escrow Payments are not made and Servicer advances its own funds to make payments that should have been paid from Borrower's escrow account, such amounts will be added to Borrower's loan obligation under the Note.
   (c) Any failure to make an Escrow Payment when due shall be deemed to be a default under the Note and Modification Agreement and upon Borrower's failure to pay the Escrow Payment, Servicer may exercise its rights under the Note and Modification Agreement.
   (d) Unless an agreement is made in writing or applicable law requires interest to be paid on the escrow account payments held by Servicer, Servicer shall not be required to pay any interest or earnings on the payments held.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay

EVERETT, CHRISTOPHER T ▮▮▮▮▮
LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179  1.01 (rev. 06.12)    Page 2 of 8

these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

   (b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Borrower understands and agrees that:

   (a) If Borrower has failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will be null and void.

   (b) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (c) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

   (d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

   (e) All administration and processing costs incurred by Servicer in connection with this Agreement, such as required notary fees, recordation fees, title costs and property valuation fees, shall be paid by the Servicer, unless otherwise stipulated.

(f) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(g) To execute other documents as may be reasonably necessary to correct an error (including but not limited to any inaccuracy, mistake or omission) if an error is detected after execution of this Agreement. In the event an error is detected, a corrected Agreement will be provided to Borrower, and this Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrected Agreement, the terms of the original Note and Security Instrument shall continue in full force and effect and such terms will not be modified by this Agreement.

7. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Lender can require under RESPA.

Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

8.  Any and all attorneys fees and legal costs incurred by Borrower or its representatives, with respect to this loan, will be the sole responsibility of the Borrower.

9.  In the event of future default, Borrower authorizes Lender and Lender's successors and assigns, to share certain Borrower public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Borrower's account balances and activity, with an authorized third party, which may include, but is not limited to, a counseling agency, state or local Housing Finance Agency, or similar entity that is assisting Borrower in connection with obtaining a foreclosure prevention alternative, including the Trial Period Plan to modify Borrower's loan ("Authorized Third Party").

Borrower understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Borrower's loan), disclosing such personal information and the terms of any relief

EVERETT, CHRISTOPHER T ██████████
LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179  1.01 (rev. 06.12)    Page 5 of 8

or foreclosure prevention alternative, including the terms of the Trial Period Plan to modify Borrower's loan, to any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with the loan or any other mortgage loan secured by the Property on which Borrower is obligated.

Borrower consents to being contacted by Fannie Mae, Lender, or Authorized Third Party concerning mortgage assistance relating to Borrower's loan including the Trial Period Plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Authorized Third Party.

By checking this box, Borrower also consents to being contacted by text messaging. ☐

In Witness Whereof, the Servicer and I have executed this Agreement.

| | |
|---|---|
| Seterus, Inc.   Authorized Signer | Date |
| _Christopher J S_ | 5-29-15 |
| EVERETT, CHRISTOPHER T | Date |

_____ [Space Below This Line For Acknowledgments] _____

State of **MINNESOTA**
County of _Goodhue_

This instrument was acknowledged before me on _May 27th_,
_2015_ by **EVERETT, CHRISTOPHER T.**

_Amy L Smith_
(Signature of notarial officer)

_Admin. Asst. Red Wing Public Library_
Title (and Rank)

(Seal, if any)

```
AMY L SMITH
Notary Public
State of Minnesota
My Commission Expires
January 31, 2017
```

My Commission Expires: _01-31-17_

EVERETT, CHRISTOPHER T   ████████
LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT   Form 3179  1.01 (rev. 06.12)   Page 6 of 8

State of Oregon

County of Washington

On _____, before me, _____, personally appeared _____,
**Authorized Signer of Seterus, Inc.,** who proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____

Notary Public
State of Oregon

My commission expires on:

Commission No.

EVERETT, CHRISTOPHER T ████████
LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT        Form 3179  1.01 (rev.  06.12)        Page 7 of 8

**Exhibit A**

Lot Fifty-five (55) of Surmyside Rearrangement of Blocks 14, 15, 16, 21, 22 and (Part of Block 13, being Lots 11 and 12) all of Kost and Crescy?s Addition to the City of Red Wing, according to the plat thereof on file and of record in the Office of the County Recorder of Goodhue, State of Minnesota

Also Known As: 1519 ROOSEVELT AVE, RED WING, MN 55066-3343

Exhibit F

567806



Doc No **T4901936**

Certified, filed and/or recorded on
11/15/11 2:15 PM
Office of the Registrar of Titles
Hennepin County, Minnesota
Michael H. Cunniff, Registrar of Titles
Jill L. Alverson, County Auditor and Treasurer

Deputy 58                                        Pkg ID 750101

**Doc Name: Limited Power of Attorney**

| | |
|---|---|
| Certified Copy of any document | $200.00 |
| Document Recording Fee | $46.00 |
| ***Document Total*** | $246.00 |

**Existing Certs**              **New Certs**

1211434

Document# 2159604
Certified Filed On 12/16/2011 1000
Registrar of Titles, Ramsey County, MN
Certificate# 567806
4.2.2  586957



STATE OF MINNESOTA, COUNTY OF HENNEPIN
Certified to be a true and correct copy of the
original on file and of record in my office

NOV 15 2011

MICHAEL H. CUNNIFF, REGISTRAR OF TITLES

By _____ Deputy

This cover sheet is now a permanent part of the recorded document.

1-2

## LIMITED POWER OF ATTORNEY

Federal National Mortgage Association, a corporation organized and existing under the laws of the United States of America, having an office for the conduct of business at 13150 Worldgate Drive, Herndon, Virginia 20170, constitute and appoints Seterus Inc. 8501 IBM Drive, Building 201 #2DD188, Charlotte, North Carolina 28262 (headquarters), a Corporation organized and existing under the laws of the state of Delaware, its true and lawful Attorney-in-Fact, and in its name, place, and stead and for its use and benefits, to execute, endorse, and acknowledge all documents customarily and reasonably necessary and appropriate for:

1.  the release of a borrower from personal liability under the mortgage or deed of trust following an approved transfer of ownership of the security property;

2.  the full satisfaction or release of a mortgage or the request to a trustee for a full reconveyance of a deed of trust;

3.  the partial release or discharge of a mortgage or the request to a trustee for a partial reconveyance or discharge of a deed of trust;

4.  the modification or extension of a mortgage or deed of trust;

5.  the subordination of the lien of a mortgage or deed of trust;

6.  the completion, termination, cancellation, or rescission of foreclosure relating to a mortgage or deed of trust, including (but not limited to) the following actions:

    a.  the appointment of a successor or substitute trustee under a deed of trust, in accordance with state law and the deed of trust;
    b.  the issuance of a statement of breach or nonperformance;
    c.  the issuance or cancellation or rescission of notices of default;
    d.  the cancellation or rescission of notices of sale; and
    e.  the issuance of such other documents as may be necessary under the terms of the mortgage, deed of trust, or state law to expeditiously complete said transactions, including, but not limited to, assignments or endorsements of mortgages, deeds of trust, or promissory notes to convey title from Federal National Mortgage Association to the Attorney-in-Fact under this Limited Power of Attorney;

7.  the conveyance of properties to the Federal Housing Administration (FHA), the Department of Housing and Urban Development (HUD), the Department of Veterans Affairs (VA), the Rural Housing Service (RHS), or a state or private mortgage insurer; and

8   the assignment or endorsement of mortgages, deeds of trust, or promissory notes to the Federal Housing Administration (FHA), the Department of Housing and Urban Development (HUD), the Department of Veterans Affairs (VA), the Rural Housing Service (RHS), a state or private mortgage insurer, or Mortgage Electronic Registration System (MERS™).

The undersigned gives to said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing requisite, necessary, and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully, to all intents and purposes, as the undersigned might or could do, and hereby does ratify and confirm all said Attorney-in-Fact shall lawfully do or cause to be done by authority hereof.

Third parties without actual notice may rely upon the power granted under this Limited Power of Attorney upon the exercise of such power of the Attorney-in-Fact that all conditions precedent to such exercise of power has been satisfied and that this Limited Power of Attorney has not been revoked unless an instrument of revocation has been recorded.

IN WITNESS WHEREOF, I have hereunto set my hand this 12th day of October, 2011.

Federal National Mortgage Association

By _____
   Barbara Cushman
   Asst. Vice President

By _____
   Francisco Nieco-Annan
   Assistant Secretary

STATE OF VIRGINIA        }
COUNTY OF FAIRFAX        }

The foregoing instrument was acknowledged before me, a notary public commissioned in Fairfax County, Virginia this 12th day of October, 2011 by Barbara Cushman, Assistant Vice President, and Francisco Nieco-Annan, Assistant Secretary of Federal National Mortgage Association, a United States Corporation, on behalf of the corporation.

_____
Notary Public: Shanicka Singleton
My Commission Expires: 10/31/2015

SHANICKA SINGLETON
Notary Public - Reg. # 7033944
Commonwealth of Virginia
My Commission Expires Oct. 31, 2015

Exhibit G



**GOODHUE COUNTY**
**FINANCE & TAXPAYER SERVICES**
509 W. 5th Street
Red Wing, MN 55066
651-385-3040
www.co.goodhue.mn.us

# Property Tax Statement

**Bill#:** 17203

**Property ID#:** R 55.515.0550

ID#: 33261

CHRISTOPHER T EVERETT
1519 ROOSEVELT AVE
**Taxpayer ID#:** RED WING  MN  55066

| Desc: | 9504010 | SETERUS |
| | SUNNYSIDE REARRANGE | Lot-055 |
| | ID# 5-1780-05500 LOT 55 | DOC #548918 |

**Property Address:** 1519 ROOSEVELT AVE    RED WING    MN

## VALUES AND CLASSIFICATION

| Taxes Payable Year: | 2016 | 2017 |
|---|---|---|
| Estimated Market Value: | 115,700 | 118,600 |
| Improvements Excluded: | | |
| Homestead Exclusion: | 26,800 | 26,600 |
| Taxable Market Value: | 88,900 | 92,000 |
| New Improvements/ Expired Exclusions: | | |
| Property Classification: | RES HMSTD | RES HMSTD |

**Step 1**

*Sent in March 2016*

**Step 2**

### PROPOSED TAX

| Proposed Tax | 1,388.00 |
|---|---|

*Sent in November 2016*

**Step 3**

### PROPERTY TAX STATEMENT

| First half taxes due: | 693.00 |
|---|---|
| Second half taxes due: | 693.00 |
| Total Taxes Due in 2017: | 1,386.00 |

**$$$**
**REFUNDS?**

*You may be eligible for one or even two refunds to reduce your property tax. Read the back of this statement to find out how to apply.*

| | 2016 | 2017 |
|---|---|---|
| **Taxes Payable Year:** | | |
| 1. Use this amount on Form M1PR to see if you are eligible for a property tax refund. File by August 15. If this box is checked, you owe delinquent taxes and are not eligible. | | 1,386.00 |
| 2. Use these amounts on Form M1PR to see if you are eligible for a special refund. | 1,280.00 | |
| **Property Tax and Credits** | | |
| 3. Property taxes before credits | 1,280.00 | 1,386.00 |
| 4. Credits that reduce property taxes: A. Agricultural Market Value Credits | | |
| B. Other Credits | | |
| **5. Property taxes after credits** | 1,280.00 | 1,386.00 |
| **Property Tax by Jurisdiction** | | |
| 6. County | 365.93 | 383.80 |
| 7. City or Town    RED WING CITY | 600.40 | 636.53 |
| 8. State General Tax | | |
| 9. School District    0256    A. Voter Approval Levies | 101.44 | 155.30 |
| B. Other Local Levies | 189.69 | 187.42 |
| 10. Special Taxing Districts    RW HRA | 11.38 | 11.59 |
| RED WING PORT AUTH | 11.16 | 11.36 |
| 11. Non-school voter approved referenda levies | | |
| 12. Total property tax before special assessments | 1,280.00 | 1,386.00 |
| **Special Assessments on Your Property** | | |
| 13. Special assessments    Int:    Principal:    Principal:    Interest: | | |
| **14. YOUR TOTAL PROPERTY TAX AND SPECIAL ASSESSMENTS** | 1,280.00 | 1,386.00 |

# PAYABLE 2017 2nd HALF PAYMENT STUB

**TO AVOID PENALTY PAY ON OR BEFORE:** OCTOBER 16

**Property ID#:**   R 55.515.0550

Make Check Payable to Goodhue County

**Bill #:**   17203

RES HMSTD

33261

CHRISTOPHER T EVERETT
1519 ROOSEVELT AVE
RED WING  MN  55066

9504010        SETERUS

Indicate address change

| SECOND 1/2 TAX AMOUNT DUE: | 693.00 |
|---|---|

**PENALTY:**          **TOTAL:**

**Goodhue County Finance & Taxpayer Services**
**509 W. 5th Street**
**Red Wing, Minnesota 55066**

Call us at 651-385-3032 to set up automatic withdrawal. Initial payment must be arranged three weeks prior to due date.

Email address: _____

---

# PAYABLE 2017 1st HALF PAYMENT STUB

Make Check Payable to Goodhue County

**TO AVOID PENALTY PAY ON OR BEFORE:** MAY 15

**Property ID#:**   R  55.515.0550

**Bill #:**   17203
RES HMSTD
33261
CHRISTOPHER T EVERETT
1519 ROOSEVELT AVE
RED WING  MN  55066

9504010        SETERUS

| FULL TAX AMOUNT: | 1,386.00 |
|---|---|
| FIRST  1/2 TAX AMOUNT DUE: | 693.00 |

**PENALTY:**          **TOTAL:**

**Goodhue County Finance & Taxpayer Services**
**509 W. 5th Street**
**Red Wing, Minnesota 55066**

Call us at 651-385-3032 to set up automatic withdrawal. Initial payment must be arranged three weeks prior to due date.

Exhibit H

Exhibit H                                        Local Form 4001-1

Debtor(s): Christopher T. Everett

**Loan History.** Begin loan history from the date of the first default related to the current default amount that is claimed in the motion.

| Date | Amount Rec'd From Debtor(s) | Monthly Amount Due Principal/Interest | Monthly Amount Due Escrow | Amount Due Late Fees | Amount Due Other Charges* | Description of other Charges |
|------|------|------|------|------|------|------|
| | | | | | Charges | |
| | | | | | | |
| | $       698.12 | | | | | Suspense at time of Default |
| 11/25/2016 | | | | | $       130.00 | Title Fee |
| 11/25/2016 | | | | | $        20.00 | Title Fee |
| 11/25/2016 | | | | | $       820.00 | Publication Fee |
| 11/25/2016 | | | | | $       100.00 | Service |
| 11/25/2016 | | | | | $        50.00 | Notice of Default |
| 11/25/2016 | | | | | $       610.00 | Attorney Fees |
| 1/1/2017 | | $       625.03 | $       402.85 | | | |
| 2/1/2017 | | $       625.03 | $       372.15 | | | |
| 3/1/1/017 | | $       625.03 | $       372.15 | | | |
| 3/16/2017 | | | | $      31.25 | | |
| 4/1/2017 | | $       625.03 | $       372.15 | | | |
| 5/1/2017 | | $       625.03 | $       372.15 | | | |
| TOTALS | $698.12 | $3,125.15 | $1,891.45 | $31.25 | $1,730.00 | |
| | (a) | (b) | (c) | (d) | (e) | |

\* Any "Other Charge" must be described, itemized by amount and allowed under note and/or mortgage (e.g., inspection fee, appraisal fee, insurance, taxes, etc.).

**Note: Columns (b) + (c) + (d) + (e) – (a) must equal the current default amount that is claimed in the motion.**

| | |
|---|---|
| Attorneys fees and filing fee for the motion if allowed under note and/or mortgage and sought by Movant to resolve motion | $0.00 |
| Current Default Amount Claimed in the Motion | $6,079.73 |
| Escrow Balance (amounts held for payment of taxes, insurance etc.) | $0.00 |
| Suspense Account Balance (amount of unapplied payments) | $698.12 |

**Exhibit I**

**Postpetition Fee Breakdown Addendum**

| Description of Fee or Charge | Date Incurred | Amount |
|---|---|---|
| Title Fee | 11/25/2016 | $130.00 |
| Title Fee | 11/25/2016 | $20.00 |
| Publication Fee | 11/25/2016 | $820.00 |
| Service Fee | 11/25/2016 | $100.00 |
| Notice of Default | 11/25/2016 | $50.00 |
| Attorney Fees | 11/25/2016 | $610.00 |
| Late Fee | 3/16/2017 | $31.25 |
| | | |
| | | |
| | | |
| Total Fees and Charges Due | | $1,761.25 |

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Chapter 13 |
| Christopher T. Everett, | Case No.: 16-33392 |
| Debtor(s). | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR RELIEF FROM AUTOMATIC STAY

### FACTUAL BACKGROUND

The Debtor filed his petition on November 1, 2016 under Chapter 13 of Title 11 of the United States Code and listed, in his schedules, real property located at 1519 Roosevelt Ave, Red Wing, MN 55066 in Goodhue County, Minnesota, that is subject to a security interest held by the movant.  This real property is legally described as follows:

> Lot Fifty-five (55) of Sunnyside Rearrangement of Blocks 14, 15, 16, 21, 22 and (Part of Block 13, being Lots 11 and 12) all of Kost and Crescy`s Addition to the City of Red Wing, according to the plat thereof on file and of record in the Office of County Recorder of Goodhue, State of Minnesota

The amount due under the movant's mortgage as of May 4, 2017 was approximately $158,079.98.  According to the county tax records, the current tax-assessed value of the property is estimated at $118,600.00.  According to the Debtor, the fair market value of the property is estimated at $138,567.00.  Based upon the information available to the movant, it estimates the fair market value of the property to be $138,567.00.Accordingly, it appears there is little, if any, equity in the property.

1

Pursuant to the chapter 13 plan scheduled for confirmation on May 11, 2017, the Debtor was to make all post-petition monthly payments due on said mortgage directly to movant.  As of May 4, 2017, the Debtor has failed to make post-petition payments required by the Debt Agreement and mortgage and the Debtor is in default.  As of May 4, 2017, the total post-petition amount of the mortgage default is $6,079.73.  A detailed breakdown of this total amount can be found on the attached Local Form 4001-1.

ARGUMENT

## I.    MOVANT IS ENTITLED TO RELIEF FROM STAY.

As the Eighth Circuit Bankruptcy Appellate Panel stated in In re Martens,

> The statutory grounds [under 11 U.S.C. §§ 362(d)(1) and (2)] for granting relief from the automatic stay are in the disjunctive. The bankruptcy court must, therefore, grant relief if the movant either proves cause, or proves that there is no equity in the property and that it is not necessary for a successful reorganization. Cause has been defined to mean "any reason whereby a creditor is receiving less than his bargain from a debtor and is without remedy because of the bankruptcy proceeding."

*In re Martens*, 331 B.R. 395, 398 (8th Cir. B.A.P. 2005)(citations omitted).   Section 362(d)(1) permits relief from stay for "cause".  See 11 U.S.C. § 362(d)(1).

> "Cause" as used in § 362(d)(1) has no clear and limited definition and, therefore, is determined on a case by case basis… "Cause" is an intentionally broad and flexible concept that permits the Bankruptcy Court, as a court of equity, to respond to inherently fact-sensitive situations.

*In re Texas State Optical, Inc.*, 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995)(citations omitted). ).

The standard for "cause" under § 362(d)(1) is broad, and may extend beyond one enumerated

2

ground of lack of "adequate protection" as defined by 11 U.S.C. § 361.  *In re Lilyerd*, 49 B.R. 109, 116 (Bankr. D. Minn. 1985).

"[T]here is no doubt that, prior to the confirmation of a chapter 13 plan, a creditor is entitled to relief from stay upon a sufficient showing of the debtor's failure to cure a significant postpetition default." *In re Morrow*, 495 B.R. 378 (Bankr. N.D. Ill. 2013)(citing 11 U.S.C. §362(d)); *see also, In re Swift*, No. 07-12787, 2009 WL 535986 (Bankr. N.D. Ill. Feb. 19, 2009)(granting motion for relief from stay for failing to make three postpetition monthly payments on a mortgage); *In re Heath*, 79 B.R. 616, 617-18 (Bankr. E.D. Penn. 1987)("debtor's failure to make regular mortgage payments as they become due can constitute 'cause' for relief from the automatic stay pursuant to § 362(d)(1).")(citing *In re Frascatore*, 33 B.R. 687 (Bankr. E.D. Pa. 1983)); *In re Hinkle*, 14 B.R. 202 (Bankr. E.D. Pa.1981); *Ukrainian Sav. and Loan Assoc. v. Trident Corp.*, 22 B.R. 491, 495 (E.D. Pa. 1982); *In re Keays*, 36 B.R. 1016, 1017 (Bankr.E.D.Pa.1984))(additional citations omitted).

In the instant matter, the Debtor has failed to make payments for the months of January, February, March, and April 2017 as required under the Debt Agreement and unconfirmed chapter 13 plan. Furthermore, there is no equity in the property, and the movant is not adequately protected. Accordingly, cause exists within the meaning of § 362(d)(1) to grant relief from the automatic stay.

## CONCLUSION

Based on the evidence submitted and the controlling law, the movant respectfully requests that its motion for relief from the automatic stay be granted.

3

Respectfully submitted,

**THE ACADEMY LAW GROUP, P.A.**

Dated: May 10, 2017                    By: _**/e/ Samuel R. Coleman**_____
                                       Samuel R. Coleman (#389839)
                                       Attorneys for Movant
                                       The Academy Professional Building
                                       25 North Dale Street
                                       St. Paul, MN 55102
                                       Telephone: (651) 209-9785
                                       Fax: (651) 292-9482
                                       samuel@theacademylawgroup.com
                                       (16-1249-BK05)

4

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | Chapter 13 |
| Christopher T. Everett, | Case No.:   16-33392 |
| Debtor(s). | |

**DECLARATION FOR PROOF OF SERVICE**

I, Samuel R. Coleman, an attorney licensed to practice law in this Court, with an office address of The Academy Professional Building, 25 North Dale Street, St. Paul, MN 55102-2227 declare that on May 10, 2017, I caused the following documents:

**Notice of Hearing and Motion,
Memorandum,
Declaration,
and Proposed Order**

to be filed electronically with the Clerk of the Bankruptcy Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

**Gregory A. Burrell, Trustee
U.S. Trustee** ustpregion12.mn.ecf@usdoj.gov, ecfbkup@comcast.net
**James A. Agosto, Esq.,** jagosto@maceybankruptcylaw.com

I further declare that I caused a copy of the foregoing documents to be mailed to the following non-ECF participants by enclosing in an envelope and mailed by First Class Mail with postage prepaid and depositing same in the post office at St. Paul, Minnesota:

1

**Christopher T. Everett**
**1519 Roosevelt Ave**
**Red Wing, MN 55066**


And I declare, under penalty of perjury, that the foregoing is true and correct.

Respectfully submitted,

**THE ACADEMY LAW GROUP, P.A.**

Dated: May 10, 2017                      By: *__/e/ Samuel R. Coleman_____*
                                                      Samuel R. Coleman (#389839)
                                                      Attorneys for Movant
                                                      The Academy Professional Building
                                                      25 North Dale Street
                                                      St. Paul, MN 55102
                                                      Telephone: (651) 209-9785
                                                      Fax: (651) 292-9482
                                                      samuel@theacademylawgroup.com
                                                      (16-1249-BK05)

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Chapter 13 |
| Christopher T. Everett, | Case No.:   16-33392 |
| Debtor(s). | |

## ORDER GRANTING RELIEF FROM STAY

This case is before the court on the motion of Federal National Mortgage Association for relief from the automatic stay imposed by 11 U.S.C. § 362(a).

Based on the record, the court finds that grounds exist under 11 U.S.C. § 362(d) to warrant relief.

**IT IS ORDERED:**

1.      The motion for relief from stay is granted as follows.

2.      The automatic stay imposed by 11 U.S.C. § 362(a) is terminated such that the movant may exercise its rights and remedies under applicable nonbankruptcy law with respect to the following property:

Lot Fifty-five (55) of Sunnyside Rearrangement of Blocks 14, 15, 16, 21, 22 and (Part of Block 13, being Lots 11 and 12) all of Kost and Crescy`s Addition to the City of Red Wing, according to the plat thereof on file and of record in the Office of County Recorder of Goodhue, State of Minnesota

1

3.      Notwithstanding Fed. R. Bankr. P. 4001(a)(3), this order is effective immediately.


DATED:                                                    _____
                                                          Katherine A. Constantine
                                                          United States Bankruptcy Judge

2